## STATE OF KANSAS

### JULY TERM, 1922.

*PRESENT:*

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. SILAS W. PORTER,
Hon. JUDSON S. WEST;  } Justices.
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON,

No. 23,933.

The State of Kansas, *Appellee,* v. John Wright, *Appellant.*

SYLLABUS BY THE COURT.

1. Criminal Law—*Charge of Assault with Intent to Kill—Conviction Under Section 76 of Crimes Act—Instructions—Statutes.* The information was drawn under section 72 of the crimes act (old section 38) and conviction was had under section 76 (old section 42.) *Held,* that the defendant was not prejudiced by including such latter section and also section 75 in the charge.

2. Same—*Juror May Not Impeach His Own Verdict.* Testimony of a juror that he consented to change his vote in order to reach a verdict which would not work a penitentiary sentence—was properly disregarded.

3. Same—*Instruction as to Reasonable Doubt.* An instruction that the jury could not acquit unless they all entertained a reasonable doubt of the defendant's guilt, not commended (*The State v. Wimer,* 97 Kan. 353, 360, 155 Pac. 7), but held not to have worked any material prejudice.

4. Same—*Instruction Not Prejudicial.* As the principal question was the identity of the person who did the shooting charged, it was not error to refer in the instructions to the crime charged in the information as if it had in fact been committed.

5. Same. No error arose from failure to distinguish more specifically between sections 75 and 76 in the instructions.

6. Same—*Refusal of Instruction Not Error.* It was not error to refuse an instruction that the jury had no right to guess at or surmise the guilt of the

defendant, and that he could be convicted only when each juror was satisfied of his guilt beyond a reasonable doubt, proper advice as to reasonable doubt having been included in the instruction given.

7. SAME—*Motion for New Trial—No Diligence Shown.* Testimony on the motion for a new trial of what an absent witness would have sworn to if present, held to be fruitless because no showing of diligence to procure his testimony was made.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed July 8, 1922. Affirmed.

*John T. O'Keefe,* of Leavenworth, for the appellant.

*Richard J. Hopkins,* attorney-general, and *Duke W. Hooper,* county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a conviction of wounding and giving great bodily harm to one George Sharp by shooting him with a rifle, and assigns as error the giving and refusing of certain instructions, the reception of certain evidence and the refusal to discharge the defendant.

The information charged that the defendant unlawfully, feloniously and with malice aforethought made an assault on George Sharp with a loaded rifle which he unlawfully and feloniously shot at, against, upon and into the body of George Sharp thereby inflicting upon him a severe and dangerous wound with the intent to kill him. It will be seen that this charge was drawn under section 72 of the crimes act, old section 38. (Gen. Stat. 1915, § 3399.) The jury found the defendant guilty of "wounding or causing great bodily harm to said George Sharp under sec. 3403" (old section 42) of the General Statutes of 1915. Section 76 provides that:

"If any person shall be maimed, wounded or disfigured, or receive great bodily harm, or his life be endangered by the act, procurement or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter if death had ensued, the person by whose act, procurement or negligence such injury or danger of life shall be occasioned shall, in cases not otherwise provided for, be punished by confinement and hard labor not exceeding five years, or in the county jail not less than six months."

The penalty under section 72 is confinement for a term not exceeding ten years. It is insisted that there is no evidence whatever on which to base the verdict of the jury; that if the defendant fired the shot which injured the prosecuting witness he was guilty

of the crime charged and nothing else, but if he fired the shot he must have done so with the intent to kill, and the jury in finding the defendant not guilty of this offense reached a compromise verdict without evidential basis.

According to the testimony of the prosecuting witness, after hearing certain whistles and calls he took his lantern and went downstairs, got an old army musket from a woodshed and started back into the house, and heard "a little scuffle on the ground."

"There is a good large elm tree standing there; and right at that John Wright turned—just kind of stepped around the tree that way—and raised a rifle and shot me. . . . He just lent over sideways and it showed him full down along here, and about that far down, and that is all the further down I could see to do any good. . . .

"Q. Oh, all right go ahead and tell what occurred. A. I have already said he raised the rifle to his shoulder and shot me.

"Q. How many shots did he fire? A. One shot.

"Q. One shot; did the bullet strike you? A. Yes, sir, it struck me."

In the written confession made by the defendant, he said among other things:

"I then walked out to George Sharp's home. George and family were home. George came to the door and I shot him with a 22 rifle. There was only one shot fired."

As one is presumed to intend the natural and probable consequences of his acts, and as the foregoing were the only versions of the shooting, the record fails utterly to establish anything in the nature of culpable negligence. It does clearly establish an intentional shooting with a deadly weapon. However, the conviction under which the information was drawn would require malice, assault with a deadly weapon and an intent to kill, maim, rob, or commit some other felony, and while the circumstances detailed indicated all these things clearly enough to warrant a conviction, still it might possibly be that the wounding took place by the act of the defendant under such circumstances as would have constituted murder or manslaughter if death had ensued. In *The State v. Burwell*, 34 Kan. 312, 8 Pac. 470, it was held that when the information is drawn under section 38, and the facts also constitute manslaughter if death had ensued under section 42, the jury may find the defendant guilty of either offense if the evidence will justify. In *The State v. Countryman*, 57 Kan. 815, 48 Pac. 137, the information was drawn under section 38, but the conviction was had under section 42, and it was held that the refusal to instruct the jury that

the state must prove specific intent to kill the particular person named in the information is harmless error. The rule announced in *The State v. Burwell,* supra, was followed. In *The State v. Ryno,* 68 Kan. 348, 74 Pac. 1114, the defendant was charged under section 38 and convicted under section 42. It was said with reference to *The State v. Burwell:*

"We see no reason to change the rule which has been so long followed and which no doubt guided the court in the submission of the case." (p. 351.)

The charge in *The State v. Ireland,* 72 Kan. 265, 83 Kan. 1035, was under sections 38 and 42, and the conviction was under the latter section. It was held that as section 42 makes no degrees of murder or manslaughter there was no necessity to instruct upon the different degrees of murder of such offenses. The court discussed the distinction between the two sections in *The State v. McCullough,* 96 Kan. 453, 152 Pac. 766, and apparently approved an instruction of the trial court that section 38 requires malice and intent to kill, while the other section defines a lower grade of offense in which the element of malice aforethought is not included; and in order to sustain a conviction under the latter section it is only incumbent upon the state to prove that the assault was made under such circumstances as would have constituted manslaughter if death had ensued. *The State v. Burwell* and *The State v. Countryman,* were followed and approved. It appears, therefore, to be thoroughly settled that when the shooting results in wounding, and the elements of malice and intent to kill are not shown, a conviction may be had under section 42.

Complaint is made that the confession was received over the objection of the defendant who contended that it was procured by third-degree methods, but other persons present when it was made testified to its voluntary character and the court took this view, and by its conclusion we are necessarily bound.

Fault is found for covering section 41 in the charge (Gen. Stat. 1915, § 3402) which section covers an assault with an intent to commit felony, but leaves out malice aforethought, but as this section works the same penalty as section 42 and is as well within the purview of section 38 as the latter section, we do not see that any harm could have come to the defendant from including section 41 in the charge.

On the motion for a new trial there was presented an affidavit of one of the jurors stating that he voted "Not guilty" when the jury

retired to their room, but finally, in order to reach an agreement, he consented to vote for the charge that would not send the defendant to the penitentiary and then it was agreed amongst the jurors to return the verdict which was returned, and he stated he was not entirely satisfied that John Wright fired the shot in question. Attention is called to this affidavit in connection with a complaint touching instruction No. 15 given by the court which concluded by telling the jury that after considering the whole case and consulting with each other "you cannot acquit the defendant unless all of the jurors entertain a reasonable doubt of his guilt." This same instruction was given full consideration in *The State v. Wimer*, 97 Kan. 353, 360, 155 Pac. 7, and the sentiments there expressed are still maintained, but while such an instruction is not to be commended, it was not materially prejudicial. Once more it must be said that jurors cannot impeach their verdicts by disclosing the mental operations by which they reached them.

In the charge touching the defendant's alibi, the jury were told that testimony had been introduced to show "that the defendant was at another place when the crime charged in the information was committed, and that the defendant did not participate in the crime." This is criticized as if it told the jury that the crime charged in the information was committed. What then? Testimony certainly showed its commission, the only question being the identity of the culprit; hence, there was no error in using this language. With the charge that if the jury believed from all the evidence beyond a reasonable doubt that the defendant committed the offense charged or any lower offense within the one charged it was their duty to convict, fault is found that the court did not explain the distinction between section 75 and section 76, especially as such an instruction was requested and refused, but we perceive no error in this regard.

The stock instruction on circumstantial evidence was properly refused because all the evidence touching the shooting in this case was purely direct evidence.

The court was requested to instruct that the jury had no right to guess at or surmise the guilt of the defendant and that he could be convicted only when each juror was satisfied of his guilt beyond a reasonable doubt. This was no improvement on the definition of "reasonable doubt" given by the court, and in the opinion of the writer all definitions of the plain expression have failed to elucidate its meaning.

On the motion for a new trial, an affidavit was presented showing what a witness named George Trackwell would have testified to had he been present at the trial, but there was no showing of any diligence to secure his attendance or any reason for failure so to do.

The strangest thing about the entire case is the absence of any apparent motive for the commission of the crime charged. The defendant was on good terms with the victim of his assault, and had been paying considerable attention to his young daughter with apparent approval of the family. Some question had arisen about his being of pure Caucasian race, but that seems to have been settled satisfactorily, and at the meeting between him and the family on the evening of the shooting everything appeared harmonious and friendly. But the story of procuring a 22-caliber weapon, the purchase of the shells, the defendant's connection with the car on the evening in question and the way the shells were scattered, the direct evidence of the prosecuting witness and the equally direct statement contained in the confession of the defendant all taken together are so conclusive as to relieve the matter of any serious doubt. The defense has been thoroughly made and skillfully presented, but being unable to find any material error we are compelled to affirm the judgment, and it is so ordered.