No. 48,300

STATE OF KANSAS, *Appellee*, v. WAYNE E. WRIGHT, *Appellant.*

(557 P. 2d 1267)

Opinion filed December 11, 1976.

*Michael D. Gragert,* of Hiebsch, Robbins & Tinker, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen E. Robison,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, *Keith Sanborn,* District Attorney, and *Robert L. Kennedy, Jr.,* were on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Wayne E. Wright, appeals from jury convictions of aggravated battery (K. S. A. 21-3414) and aggravated weapons violation (K. S. A. 21-4201 [1] [b] and 21-4202). The charges arose out of the stabbing of Michael (Mike) Smith outside of defendant's apartment in Wichita. The stabbing took place during the last of three altercations between Mike and defendant which occurred during the course of the evening.

The state's evidence reveals that in the late afternoon on November 2, 1974, the victim, Mike, and his brother, Randy Smith, drove to the home of a young female friend, Donna DeWater, about 5:30 p. m. Donna testified that Mike and Randy had been drinking and they continued to do so while she was with them. Mike, Donna and Randy returned to Mike's house for a short time and then decided to visit Max Burgess, who was a former classmate and friend of Mike. Upon discovering that Max was not at home in his apartment, they walked next door to an apartment occupied' by defendant, Wayne Wright, and his girl friend, Edith Trotter. Mike testified that he was merely acquainted with the defendant, but knew Edith Trotter quite well, having lived in the same apartment with her for a month or two. According to Mike, Edith left him and immediately moved in with defendant in his apartment. Despite these close—but recently broken—ties, Mike testified there was no animosity between him and either the defendant or Edith, and that he had had no difficulties with defendant until the altercations which precipitated this criminal prosecution.

Donna testified that when she, Mike, and Randy knocked on the door of defendant's apartment they were invited in. They stayed for about twenty minutes and everyone drank beer and Bloody Marys. She further testified that Randy became drunk and fell asleep in the front room in defendant's apartment. When Max Burgess returned he was included in the group, which then moved back and forth between the two apartments. Donna further testified that she was a friend of Candra Smith, a sister of Mike and Randy, and that it was decided to pick up Candra and bring her to the party. As they prepared to go to the car, Mike and defendant had to help Randy because he could barely walk. When they got to the parking lot, adjacent to the apartment house, the first alterca-

tion took place and was soon followed by the second when the group returned to defendant's apartment. The two incidents were described by Donna:

". . . Randy either fell down or was pushed down. Mike said he didn't like it and he and Wayne started fighting. When they started, they just stood back arguing and then Wayne pushed Mike and Mike pushed him back once and Wayne had a knife behind his back. The knife was about 8 inches long with a 4 to 4½ inch blade. I never did see him strike at Mike with it.

"After they scuffled, they walked back into the house as if they were friends again; about 5 minutes later I went into the house and they were arguing in the kitchen once more. They started shoving each other back and forth. I saw Wayne push Mike into a chair after which he grabbed a butcher knife off of the cabinet. Wayne then got on top of Mike for a few minutes and I couldn't see him. Then I saw Wayne help Mike over to a chair in the living room and Mike had a gash on his head. (The witness indicated that the gash was on the left forehead.) I didn't actually see anything that happened in the kitchen the first time; all I noticed was that Mike, apparently in the scuffle, got his head cut over the temple."

It was then decided that Mike needed to go to the hospital—so defendant went next door and got Max Burgess to help take Mike out to the car. After Mike was put in the car the third altercation took place which was described by Donna as follows:

". . . Mike then said 'I'm going to come back and get you,' whereupon Wayne, who didn't say anything, pulled him out of the car and threw him on the ground and hit him about 3 times with his fists. Then Wayne left and went back in the house; Max and I just stood there and didn't say anything. At that time it was pretty dark and raining. I didn't actually see what happened between Mike and Wayne, after Mike had been put in the car, and when they were scuffling on the ground.

"The car they placed Mike in was Max's station wagon and they had put the back seat down so that he was in a reclining position. The car was in back of the apartment complex.

"After the incident, Wayne went back into the house and got a butcher knife and brought it back and Mike was still lying on the ground face down. Wayne then pulled Mike over and got on top of him with his back toward me and I couldn't see the rest of what happened.

"The butcher knife was about 12 inches long with a 7½ inch blade.

"While Wayne was on top of Mike, Mike was lying face up. Wayne stayed on top of him for three to four minutes. I couldn't see what Wayne was doing with his hands but I did hear him say he would kill Mike. I then saw Max put Mike back into the car and I could see that Mike had two wounds in his chest. The wounds were in the area of the heart and I had not seen the wounds prior to this last incident."

Thereafter, Max and Donna drove Mike to the hospital where he was treated by Dr. James Newby.

Dr. Newby testified that Mike had no palpable blood pressure or pulse and had been without obtainable blood pressure for approximately an hour and twenty minutes. Mike had a penetrating wound in the left chest which was somewhere between 3½ to 4 inches in depth and had penetrated the heart wall and also a small laceration in the left temple that was not deep in penetration. Dr. Newby further testified:

"If the victim had not received medical attention as quickly as he had he would have died very shortly."

Mike Smith's testimony generally corresponded with that of Donna's up to a point when they were in defendant's apartment drinking Blood Marys. He testified:

". . . I can't remember if we made the Bloody Marys before we brought in the six-pack or afterwards. I don't remember anything that happened to me, or any conversations, after drinking them. My memory goes blank after that point at which I had been in Edith's apartment for 30 to 45 minutes. . . ."

Defendant testified in his own behalf. He admitted participation in the first two altercations, but claimed that he was acting in self-defense. He denied that the third altercation took place. Concerning the first incident, when he and Mike were trying to get Randy into the car, defendant testified that after Randy fell down and was being picked up, Mike hit him on the side of the head and that the fight ensued and finally:

". . . I said, 'This is not for us, you and I,' so he come at me again, and I hit him. All right. Randy Smith comes at me. I shove him down. There here comes Mike again, and I knocked him down again. He's just kind of laying back on the ground looking at me, you know. I go over and help him up, and we go into the house.
"Q. You and Mike Smith?"

Concerning the second altercation defendant testified that after they were back in his apartment he remembered Mike saying, "'I'm going to get you now,'" and when defendant turned around and looked Mike had a knife and was coming at him. Defendant testified that after it was discovered that Mike had a cut on his head he got Max to help him take Mike to the parking lot and put him in the back seat of Max's station wagon. Defendant testified as follows:

"Q. Then what happened?
"A. Put him in the car, and I went back in the house. From there, I went upstairs. My clothes were bloody, and I changed clothes.
"Q. Did you see Donna at that particular time?

"A. I saw her when I was going to put him in the front seat of the car. She was next to Max in the middle, in the front seat."

Defendant testified that he was not carrying a knife at all and that he did not know of any knives in the kitchen other than the one Mike had.

On cross-examination defendant reasserted that he did not have a knife that evening, but did admit that he had been told that he had a knife. He denied any participation in the stabbing incident, described by Donna, and reasserted that after he put Mike in the station wagon he turned directly around, walked in the house, and went upstairs to change his clothes.

In his first point on appeal defendant contends the court erred with respect to count one by failing to instruct the jury on the lesser included offenses of battery (K. S. A. 21-3412) and criminal injury to persons (K. S. A. 21-3431 [now 1975 Supp.]). Defendant concedes that no request was made for such instructions at trial, but on appeal he contends the trial court committed clear error in this regard.

An affirmative duty is imposed upon the trial court, in a criminal case, to instruct the jury as to all lesser crimes of which the accused might be found guilty by K. S. A. 21-3107(3) which reads:

"(3) In cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced, even though such instructions have not been requested or have been objected to."

The state concedes that battery and criminal injury to persons are lesser included offenses within aggravated battery. It is the state's position that no evidence was presented that could support either of the two lesser included offenses and, thus, no instructions in this regard were necessary.

The enactment of 21-3107(3), which became effective July 1, 1970, worked significant changes in the law concerning the trial court's duty to instruct on lesser included offenses. (See, *State v. Weyer*, 210 Kan. 721, 504 P. 2d 178.) It has been a point on appeal in many cases since its enactment. While we have always recognized the duty explicitly imposed upon the trial judge by the statute, we have consistently held that the duty to instruct on lesser included offenses arises only where there is at least some evidence on which the defendant might reasonably have been convicted of the lesser offense. (*State v. Goodseal*, 220 Kan. 487,

553 P. 2d 279; *State v. Gander*, 220 Kan. 88, 551 P. 2d 797; and *State v. Ponds and Garrett*, 218 Kan. 416, 543 P. 2d 967.) It follows that if no evidence is presented that could support a contention of a lesser crime, no instruction is necessary. (*State v. Ponds and Garrett*, supra; *State v. McDermott*, 202 Kan. 399, 449 P. 2d 545, cert. denied 396 U. S. 912, 24 L. Ed. 2d 187, 90 S. Ct. 226.)

The distinction between aggravated battery under 21-3414 and simple battery under 21-3412, and criminal injury to persons is the intent to injure required in the first offense, but not essential to the latter two. (*State v. Gander*, supra; *State v. Seely*, 212 Kan. 195, 510 P. 2d 115; and *State v. Warbritton*, 211 Kan. 506, 506 P. 2d 1152.)

Criminal injury to persons defined in K. S. A. 21-3431 [now 1975 Supp.] is the successor to K. S. A. [1965] 21-435 (maiming, wounding, disfiguring or causing great bodily harm) which previously appeared as section 42 of the crimes act. (Gen. Stat. 1909, § 2530.) The lack of intent to injure was recognized as the distinguishing feature between 21-435 and the higher degrees of assault and battery offenses. (*State v. Wright*, 112 Kan. 1, 208 Pac. 630; *State v. McCullough*, 96 Kan. 453, 152 Pac. 766; and *State v. Powers*, 92 Kan. 220, 139 Pac. 1166.) Concerning § 21-3431 in 10 Vernon's Kansas Statutes Annotated, Criminal Code, 1976 pocket part, (Spring & Ryan), the authors comment:

"This section to some extent overlaps sections K. S. A. 21-3412 through 3415, which deal with batteries. It does fill a gap, however, with respect to unintended injuries." (p. 75.)

In its recommended instruction under 21-3431, the PIK Committee states an element of offense in these words:

."2. That this act was done without the specific intent to injure or endanger the life of _____; and" (PIK[Criminal] 1975 Supp. 56.18-A.)

In the instant case, defendant gave no testimony nor was there any other evidence submitted which would support a theory of lack of intent to injure in the stabbing altercation which gave rise to the charges filed. The defendant described in considerable detail his participation in the first two altercations as to which he claimed self-defense. Concerning the third and serious altercation, in which the stabbing took place, defendant emphatically denied any participation whatsoever. Lack of intent was not made an issue as in *State v. Warbritton*, supra.

While Donna DeWater did not actually see the stabbing she

testified that defendant did go back into his house, got a butcher knife about 12 inches long with a 7½ inch blade, came back to Mike, rolled him over, got on top of him while he was lying face up on the ground, and stayed on top of him for three or four minutes. She could not see what defendant was doing with his hands, but heard him say he was going to kill Mike. She could see Mike's chest wounds when he was again put into the car by Max Burgess. Intent, like any element of a crime, may be shown by circumstantial evidence, and one is presumed to intend all the natural consequences of his acts. (*State v. Gander,* supra; and *State v. Townsend,* 201 Kan. 122, 439 P. 2d 70.) One who stabs a person in the chest with a knife, with a 7½ inch blade, may be presumed to intend to injure the victim. Absent any evidence negating an intent to injure, the trial court had no duty to instruct on either of the lesser offenses.

In connection with his contention that instructions should have been given on the lesser included offenses, defendant makes the further argument that he was entitled to such instructions since the trial court apparently thought there was evidence of intoxication sufficient to require the submission of an instruction on voluntary intoxication. Defendant relies on *State v. Seely,* supra. It is true we said in *Seely* that voluntary intoxication would be a defense if it rendered an accused incapable of forming a particular intent, which was a necessary element of the crime charged. In *Seely* we found error in the trial court's refusal to give requested instructions on the lesser included offense of battery, where the main thrust of defendant's evidence on intoxication was that he was incapable of forming the intent required by aggravated battery. In *Seely* the defendant started drinking at 9 a. m., the battery took place at 8:45 p. m. Defendant remembered nothing concerning the aggravated battery in question. Defendant's condition was described in the *Seely* opinion as follows:

"The last thing appellant remembered of that afternoon was being at a friend's house between 3:30 and 5:00 p. m. After that all was blank until he woke up sick that night, and again until he found himself the next morning at the Sedgwick county prison farm. He didn't remember ever seeing either of the victims before encountering them in court." (p. 196).

In the instant case defendant described the events of the evening in considerable detail and was specific as to his conduct at the time of the stabbing, which was established by the testimony of Donna DeWater. Under the record presented here it appears the

trial court was overgenerous in giving an instruction on voluntary intoxication. Defendant's own testimony negates any possibility that he was intoxicated to the extent that he was incapable of forming an intent to injure.

Defendant next contends the trial court erred in overruling his motion for a new trial based on newly discovered evidence. Defendant's argument is based on the failure of Edith Trotter to appear as a witness at trial. The record discloses that the state twice attempted, without success, to serve a subpoena upon her and defendant's counsel, in argument on motion for a new trial, stated that he had tried to locate her without success. However, Edith Trotter did appear at the time of argument on defendant's motion for a new trial. Defendant now claims that since Edith was finally located, the trial court's refusal to grant a new trial was an abuse of discretion and constituted reversible error.

Whether a new trial, based on newly discovered evidence, is to be granted rests generally on the sound discretion of the trial court. It must appear to the court's satisfaction that the alleged newly discovered evidence was not within the defendant's knowledge at the time of trial. (*State v. Williamson,* 210 Kan. 501, 502 P. 2d 777; and *State v. Lora,* 213 Kan. 184, 515 P. 2d 1086.) The record is silent as to what Edith Trotter's testimony might have been, and there is no indication that a proffer was made in connection with defendant's motion for a new trial.

In *State v. Law,* 203 Kan. 89, 452 P. 2d 862, this statement appears:

"We have said that a new trial should not be granted on the ground of newly discovered evidence unless the trial court is satisfied the evidence would probably produce a different verdict, and that the credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Harris,* 126 Kan. 710, 271 Pac. 316; *State v. Jella,* 132 Kan. 509, 296 Pac. 350.) Our appellate review of the order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Jella,* supra; *Weed v. United States,* 380 F. 2d 914.) We find it did not." (p. 92.)

Where the record is silent as to what the newly discovered evidence might be, we, of course, cannot find abuse of discretion in the trial court's denial of a new trial. We further note that defendant did not seek a continuance when Edith Trotter failed to appear at trial. On the record presented, we find defendant's contention to be wholly without merit.

Defendant next contends the trial court erred in overruling his motion for discharge on count two (the aggravated weapons viola-

tion) on the ground there was insufficient evidence to support the jury's verdict. Defendant argues that as to the third altercation the evidence of the alleged length of the knife was so sparse and speculative as to be incapable of providing a basis for the jury's finding that the knife blade was in fact more than four inches in length. Defendant also complains that the trial court did not treat the three altercations as separate incidents, but allowed the jury to consider them as a single occurrence. It is true Donna DeWater described three separate altercations and two different knives. However, her description of the butcher knife, which she saw in defendant's hand during the third altercation, was specific and put the knife within the proscription of K. S. A. 21-4201 (b). The jury believed Donna. Applying the test to be applied in ruling on a motion for judgment of acquittal, as set out in our holding in *State v. Gustin,* 212 Kan. 475, 510 P. 2d 1290, we find no error in the trial court's denial of defendant's motion.

Finally, defendant claims his rights to due process were denied because of alleged irregularities in the information and journal entry of judgment. His complaint in this regard stems from what appears to have been a typographical error in the information, wherein the statutory reference on the aggravated weapons charge was written K. S. A. 21-4204, instead of K. S. A. 21-4202. The erroneous citation was repeated in the journal entry. The information was properly drawn in the language of 21-4201 and 21-4202, and no complaint is made in this regard. Defendant does not contend that he was misled or in any manner prejudiced; he bases his contention solely on the technical error. Defendant's contention is without merit. Subsection (2) of K. S. A. 22-3201, (Amended, Laws 1976, Chap. 163, Sec. 14), provides in pertinent part:

". . . The complaint, information or indictment shall state for each count the official or customary citation of the statute, rule, regulation or other provisions of law which the defendant is alleged to have violated. Error in the citation or its omission shall be not ground for dismissal of the complaint, information or indictment or for reversal of a conviction if the error or omission did not prejudice the defendant."

A careful examination of the record discloses no trial errors which would justify the granting of a new trial.

The judgment is affirmed.

PRAGER, J., dissenting: I respectfully dissent. Although I am in complete agreement with the principles of law which are set forth in

the majority opinion, I have concluded from a careful reading of the evidentiary record that there was a legitimate factual issue relating to whether the defendant Wright had the specific intent to injure which is an essential element of aggravated battery (K. S. A. 21-3414). The evidence of defendant's intoxication required the trial court to instruct the jury on the lesser offense of criminal injury to persons as defined in K. S. A. 21-3431.

Donna DeWater testified unequivocally that Mike Smith, Wayne Wright, and Randy Smith were drunk on the evening in question. It was undisputed that the defendant Wright and Mike Smith fought back and forth on a number of occasions during the evening and after each exchange of blows would seem to become friends again. Then the fight would start all over again. Defendant Wright when asked whether or not he had a knife that evening testified that he was told he did but that he did not remember actually having a knife. The trial judge obviously believed that defendant's intoxication was a factor in the case since he instructed the jury in substance that although voluntary intoxication is not a defense to a charge it may be taken into consideration in determining whether the accused was capable of forming a particular intent or state of mind. Although giving this instruction, the court did not then instruct the jury as to any lesser offense of which the defendant might be guilty in the event the jury concluded that as a result of his intoxication the defendant was unable to form the intent to injure which is a necessary element of aggravated battery. I would reverse and remand the case for a new trial so that a jury could consider defendant's guilt of the lesser included offense of criminal injury to persons as defined in K. S. A. 21-3431.