IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,492

STATE OF KANSAS,
*Appellee*,

v.

LOARN EARL FITZGERALD II,
*Appellant.*

SYLLABUS BY THE COURT

Prosecutions in this state are based on the charging document, which may be a complaint, indictment, or information. If the State charges a defendant with aggravated criminal sodomy under K.S.A. 2017 Supp. 21-5504(b)(2) but proves aggravated criminal sodomy under K.S.A. 2017 Supp. 21-5504(b)(1), the defendant's conviction is reversible for insufficient evidence.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 23, 2015. Appeal from Cowley District Court; JAMES T. PRINGLE, judge. Opinion filed August 10, 2018. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Ian T. Otte*, deputy county attorney, argued the cause, and *Christopher E. Smith*, county attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

1

BEIER, J.: In this appeal, the State challenges the Court of Appeals' decision to reverse the conviction of defendant Loarn Earl Fitzgerald, II, for aggravated criminal sodomy because insufficient evidence was presented of the crime as charged. We agree that reversal is necessary.

FACTUAL AND PROCEDURAL BACKGROUND

K.L. and her daughter, C.C., lived in a small home with Fitzgerald and others for a few months in late 2012 and early 2013. A few months after K.L. and C.C. moved, K.L.'s friend asked C.C. about what to do if anyone touched her "bad spots." C.C. responded that she should tell her mother. K.L. then asked C.C. if anyone had touched or hurt her. At that point, C.C. said Fitzgerald had "been doing bad things to her" and proceeded to describe those acts. C.C. told her mother that Fitzgerald "was making her touch his private areas, and he was touching her private area, and he was making her suck on him."

Detective Troy Cochran of the Arkansas City Police Department met with K.L. and C.C. to conduct a recorded interview about C.C.'s allegations. During the interview, C.C. gave many details of the house where she and her mother had lived with Fitzgerald, the bedroom in which the abuse occurred, and the abuse itself.

C.C. told Cochran that Fitzgerald had inappropriately touched her butt with his hand. She also demonstrated how he put his hand on her butt and "rubbed it." C.C. also told Cochran that Fitzgerald said he wanted to "squirt something in [her] mouth" and that "he wanted to go downstairs." When she refused, he told her to think about it. C.C. also said Fitzgerald had told her he wanted to use his "bad spot" to squirt something in her mouth or her own "bad spot." She said that the first time Fitzgerald sexually assaulted C.C., they were in his bedroom; she was sitting on the bed and he was standing on the floor. C.C. described the size of Fitzgerald's penis when he forced it into her mouth and

2

showed Cochran how Fitzgerald grabbed the back of her head while he sodomized her. This general pattern was repeated at least 16 times in the bedroom. C.C. alleged that no one else was in the house when the abuse occurred, except for one occasion when Fitzgerald's mother was in the house.

According to C.C., Fitzgerald would promise to let her play with his Xbox and would ask what else she wanted in exchange for sexual acts. She was afraid to tell anyone because she thought Fitzgerald would get angry with her.

C.C. also told Cochran she had not been forced to touch the "bad spot" of anyone other than Fitzgerald, and no one else had touched her "bad spot" or buttocks.

The State charged Fitzgerald with aggravated criminal sodomy by "feloniously [causing C.C.] (DOB: 02/21/2004), a child under 14 years of age, to engage in oral copulation with another person" in violation of K.S.A. 2017 Supp. 21-5504(b)(2) and (c)(3).

Although the State charged Fitzgerald with causing C.C. to engage in oral copulation "with another person," all parties thereafter proceeded with the case as though Fitzgerald had been charged with engaging in sodomy with C.C. himself. Compare K.S.A. 2017 Supp. 21-5504(b)(2) ("causing a child under 14 years of age to engage in sodomy with any person") with K.S.A. 2017 Supp. 21-5504(b)(1) ("[s]odomy with a child who is under 14 years of age").

The prosecutor's opening statements included comments such as: "[C.C.] told her mother about some sexual acts that had been perpetrated on her by the defendant, Loarn Fitzgerald"; "[C.C.] told her mom some of the things [Fitzgerald] had done to her"; and "[C.C.] is going to explain what [Fitzgerald] did to her." Fitzgerald's counsel made

3

similar statements that focused on Fitzgerald's interactions with C.C.: "We'll ask about whether there were any physical characteristics [C.C.] could describe which would pinpoint [Fitzgerald]."

All of C.C.'s testimony concerned Fitzgerald perpetrating the sodomy personally. She told the jury that it occurred 18 to 20 times, most of them when she was living at Fitzgerald's house. She also testified that on other occasions Fitzgerald tried to touch her genitals. On one occasion, Fitzgerald touched her butt on the outside of her clothing and, on a different occasion, he touched her "bad spot" while they were in Fitzgerald's kitchen. C.C. said no one else was present during the sexual abuse. She did not tell anyone initially because Fitzgerald said that he would "whoop" her if she did.

Defense counsel's cross-examination of C.C. and K.L. focused on the number of people living in the small house with Fitzgerald and his wife, Heather. The defense also established that neither Heather nor K.L.'s boyfriend, who was among those living at the house, was employed during the relevant time period, suggesting it would have been difficult for C.C. and Fitzgerald to be alone as often as C.C. described.

The State's evidence also included video of C.C.'s interview with Cochran and testimony from Cochran about his investigation. In addition, the Chief of the Spring Hill Police Department, Richard Mann, testified that he had encountered Fitzgerald while investigating a separate allegation of rape and indecent liberties with a child in July 2002. At that time, Fitzgerald confessed to having sex with his 13- and 15-year-old cousins.

Fitzgerald's only witness was Heather. She supported the defense theory that it would have been impossible for C.C. and Fitzgerald to be alone as C.C. described. Heather told the jury that her grandmother-in-law "never [left] the house," and "[K.L.'s] five [children], plus me, and my husband, our two kids, his grandmother and, after

4

February, his mom" lived in the house in the same time frame. Heather also testified she had taken time off from October to the middle of January to take care of her own daughter, and C.C.'s father was at the house much of the time because he lived there and was "usually always drinking" instead of working. She said K.L. was gone only for her four-hour work shifts. She also said C.C. could not have been alone in the bedroom with Fitzgerald because "I [do not] allow kids in my room."

Heather also testified that C.C. would call and want to come over after she and her family moved out. According to Heather, Fitzgerald would take C.C. into his room and put a movie on for her; Fitzgerald would leave the door "open the entire time"; and he would come out of the room immediately after he started the movie. When C.C. would come over, Fitzgerald's grandmother and Heather were always home. Heather also said many people visited the house during that period and usually brought their children. No one ever expressed concerns to her about Fitzgerald, even though some of them knew Fitzgerald had admitted to sexually abusing members of his family.

The prosecutor cross-examined Heather about statements she had made to Cochran that C.C. could have been alone with Fitzgerald more than 50 times. Heather said she did not remember saying that. On redirect, Heather testified that when she watched the video of C.C.'s interview with Cochran, she initially thought C.C. was telling the truth; but, as she watched more of it, it became apparent to her that C.C. was lying.

The parties' closing arguments also focused exclusively on whether Fitzgerald engaged in sodomy with C.C.—not on whether he caused her to engage in sodomy with a third person.

Neither party objected to the jury instructions that listed the elements of aggravated criminal sodomy:

"Instruction Number 3:  The Defendant is charged with aggravated criminal sodomy. The Defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant engaged in sodomy with [C.C.], who was less than 14 years old. The State need not prove the defendant knew the child's age.

"2. The Defendant had [C.C.] engage in oral contact with his male genitalia intentionally, knowingly, or recklessly.

"3. The Act [o]ccurred on or about the 1st day of January, 2013, and the 28th day of February, 2013, in Cowley County, Kansas.

"'Sodomy' means . . . oral contact of the male genitalia . . . .

"Aggravated criminal sodomy means:  (1) sodomy with a child who is less than 14 years old; (2) causing a child less than 14 years old to engage in sodomy with any person . . . ."

The district court also separately instructed the jury that the "State must prove that the Defendant had [C.C.] engage in oral contact with his male [genitalia] intentionally, or knowingly, or recklessly."

The jury found Fitzgerald guilty of aggravated criminal sodomy, and the district judge gave Fitzgerald a life sentence.

On appeal, the Court of Appeals reversed Fitzgerald's conviction, relying on *State v. Laborde*, 303 Kan. 1, 360 P.3d 1080 (2015), and *State v. Dickson*, 275 Kan. 683, 69 P.3d 549 (2003). The panel characterized *Dickson* as "a nearly identical case." *State v. Fitzgerald*, No. 112,492, 2015 WL 9458718, at *2 (Kan. App. 2015). The State

6

petitioned this court for review, arguing that *Dickson* was "wrongly decided and wrongly applied." In addition, in the State's view, any error in the charging document was not reversible, because it informed Fitzgerald of the accusation he must defend against.

The State's petition was filed before this court handed down its decision in *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), which reformed the analysis on charging document error. Thus, after granting review, we asked the parties to submit briefs to "address the type of charging document insufficiency being alleged and 'any additional or distinct role that federal or state constitutional due process and notice principles play in determining charging document insufficiency'" and apply *Dunn,* 304 Kan. at 814, *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010), and *State v. Brown*, 295 Kan. 181, 284 P.3d 977 (2012), to this case.

In its supplemental brief to this court, the State argued that Fitzgerald failed to preserve any challenge to the charging document; that he was properly charged with aggravated criminal sodomy; alternatively, that any error in the charging document was harmless; and that there was no alternative means super-sufficiency issue because Fitzgerald's jury was instructed on only one statutorily defined means of committing aggravated criminal sodomy, and the means instructed upon were amply supported by evidence.

Fitzgerald's supplemental brief redirected the court's attention to his actual appellate challenge—insufficiency of evidence to support the alternative means of aggravated criminal sodomy charged rather than the one instructed upon. Under *Dunn*, Fitzgerald argued, he was not alleging a defect in the charging document. He was alleging a defect in the proof supporting the verdict on the crime charged.

7

We agree with Fitzgerald's framing of the issue in this case. The State successfully charged Fitzgerald under K.S.A. 2017 Supp. 21-5504(b)(2), which prohibits "causing a child under 14 years of age to engage in sodomy with any person." This court has held that the use of "any person" in the identically worded predecessor statute means "a person other than the defendant." See *Dickson*, 275 Kan. at 693. And we decline the State's invitation to overrule *Dickson* today.

In contrast, the jury instructions were based on the language of K.S.A. 2017 Supp. 21-5504(b)(1), which prohibits "[s]odomy with a child who is under 14 years of age." This is the statutory subsection that governs situations in which the defendant engages in sodomy with the victim. *Dickson*, 275 Kan. at 689-92; see also *State v. Brown*, 295 Kan. 181, 196, 200-01, 284 P.3d 977 (2012) (aggravated indecent liberties statute with comparable structure sets out alternative means; different subsections contain distinct material elements; some require participation of third person while others do not).

In *State v. Dunn*, we outlined three types of "charging document insufficiency a criminal defendant may challenge." 304 Kan. 773, 815. The first type of insufficiency implicates the Kansas Constitution's requirements for alleging the correct court and territory. The second type of insufficiency concerns whether the charging document contains enough facts to constitute a crime. The third type of insufficiency focuses on whether the charging document complies with federal and state constitutional requirements for due process and notice. 304 Kan. at 815.

Fitzgerald is correct that the charging document in this case suffers from none of the infirmities we identified in *Dunn*. And this is not a case, as the State asserts, ripe for application of K.S.A. 22-3201(b), which provides that "[e]rror in the citation or its

8

omission shall not be ground for . . . reversal of a conviction if the error or omission did not prejudice the defendant." This statute controls when we are faced with an erroneous or missing citation. See *State v. Wright*, 221 Kan. 132, 140, 557 P.2d 1267 (1976) (information's language properly taken from correct statute; defendant received adequate notice of charge despite typographical error in citation). Fitzgerald's charging document had neither. It contained an accurate description of one means to commit aggravated criminal sodomy and an accurate citation to the subsection of the statute governing that means.

The actual problem in this case is exactly the same as that confronted by this court in *Laborde*, 303 Kan. at 2.

In that case, the State charged defendant Jodie Laborde with theft by deception, but all parties proceeded from that point forward as though Laborde was on trial under a different theory—theft by unauthorized control. Both parties submitted jury instructions on theft by unauthorized control, and Laborde was found guilty. On appeal, Laborde argued there was insufficient evidence to convict her of the theft by deception that had been charged. 303 Kan. at 5. We reversed Laborde's conviction, observing that the State failed to prove one of the elements of theft by deception. 303 Kan. at 7-8. We specifically noted that "[p]rosecutions in this state are based on the charging document, which may be a complaint, indictment, or information," citing K.S.A. 22-3201(a). 303 Kan. at 6.

Today the statute we referenced in *Laborde* remains in effect, and the maxim it recites remains true, despite the changes wrought by *Dunn* since *Laborde* was decided. The Kansas Constitution may endow district courts with subject matter jurisdiction over criminal cases generally. See *Dunn*, 340 Kan. at 810-11. But the charging document in any specific case still sets the outer limits of the conviction or convictions that can result. See *State v. Ward*, 307 Kan. 245, 259-60, 408 P.3d 954 (2018) (State failed to prove

9

crimes charged, regardless of whether it may have proved another crime; conviction reversed).

With Laborde as the baseline, we turn to analysis of the sufficiency question actually raised by Fitzgerald. Our standard of review is well known.

> "When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1125 (2014).

We acknowledge at the outset that this case does not present a typical sufficiency challenge. We are not concerned here with whether the State's proof measured up under the elements instruction given for a crime. We must instead decide if the State proved the crime it charged.

In this case, Fitzgerald was charged with causing C.C. "to engage in oral copulation with another person" under K.S.A. 2017 Supp. 21-5504(b)(2).

This statute "demands a specific kind of proof from the State." *Laborde*, 303 Kan. at 6. That proof is not the same as the entirely sufficient evidence the State marshaled and presented of Fitzgerald causing C.C. to engage in sodomy with him. See *Dickson*, 275 Kan. at 694-95. Under these circumstances, we are compelled to reverse Fitzgerald's conviction as unsupported by sufficient evidence of the crime the State charged. The error of insufficiency is not amenable to review for harmlessness. See *State v. Wright*, 290 Kan. 194, 205-06, 224 P.3d 1159 (2010) (sufficiency error never subject to harmlessness inquiry) (quoting Beier, *Lurching Toward the Light:  Alternative Means*

*and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275 [2005]), *disapproved of on other grounds by State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014).

One closing note: As described above, the State advanced several arguments we have rejected—about the soundness of *Dickson*, about the sufficiency of the charging document, about the applicability of K.S.A. 22-3201(b) on charging documents' erroneous or omitted citations. As in *Laborde*, it has not argued instruction error, constructive amendment, or variance. It has not supported any such argument with statutory, common law, or constitutional authority. Discussion of the applicability or the merit of any such arguments in a situation such as the one before us awaits another case.

The Court of Appeals decision is affirmed. The judgment of the district court is reversed.

BILES, J., concurring in the result.

＊ ＊ ＊

LUCKERT, J., concurring: I agree with the majority's decision and its analysis. I write separately simply to explain why I would not depart from *State v. Dickson*, 275 Kan. 683, 69 P.3d 549 (2003). My reasons depend on the rules of statutory interpretation and, because I find K.S.A. 2017 Supp. 21-5504(b) ambiguous, the rules of statutory construction.

Resolving the question of whether the State presented sufficient evidence of the crime of aggravated sodomy as charged under K.S.A. 2017 Supp. 21-5504(b)(2) depends on what the State had to prove. In turn, the determination of what the State had to prove depends on the elements of the crime defined by the statute, and that requires us to

11

interpret the statute. Legislative intent governs that review, and "[r]eliance on the plain and unambiguous language of a statute is 'the best and only safe rule for determining the intent of the creators of a written law.'" *State v. Spencer Gifts*, 304 Kan. 755, 761, 374 P.3d 680 (2016) (quoting *Merryfield v. Sullivan*, 301 Kan. 397, 399, 343 P.3d 515 [2015]). We read the statutory language as it appears, without adding or deleting words, and only "[i]f the language is less than clear or is ambiguous, [do] we move to statutory construction." *Ambrosier v. Brownback*, 304 Kan. 907, 911, 375 P.3d 1007 (2016). In examining the plain language, we read the entire statute, not just an isolated section or subsection. *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 452, 436 P.2d 828 (1968).

K.S.A. 2017 Supp. 21-5501(b) defines sodomy as "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; anal penetration, however slight, of a male or female by any body part or object; or oral or anal copulation or sexual intercourse between a person and an animal." K.S.A. 2017 Supp. 21-5504(b) adds additional elements in defining the crime of aggravated criminal sodomy:

"(b) Aggravated criminal sodomy is:

(1) Sodomy with a child who is under 14 years of age;

(2) causing a child under 14 years of age to engage in sodomy with any person or an animal; or

(3) sodomy with a victim who does not consent to the sodomy or causing a victim, without the victim's consent, to engage in sodomy with any person or an animal under any of the following circumstances:

(A) When the victim is overcome by force or fear;

(B) when the victim is unconscious or physically powerless; or

(C) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by, or was reasonably apparent to, the offender." K.S.A. 2017 Supp. 21-5504.

12

In my view, the ambiguity arising from these provisions makes application of the statute problematic. I have trouble discerning the difference between (b)(1) and (b)(2). The words "causing a child under 14 years of age to engage in sodomy with *any* person" may seem clear on its face if read in isolation. (Emphasis added.) K.S.A. 2017 Supp. 21-5504(b)(2). And, as the dissent suggests, by itself, it could be read to apply to acts engaged in with a defendant—that is, with the defendant being "any person."

Reading (b)(2) in that way makes (b)(1) meaningless, however. The two subsections read together differentiate the situations of a defendant (1) committing sodomy *with a victim* and (2) *causing a child* to engage in sodomy with any person. Another basic rule of statutory interpretation is that "'we do not interpret statutes in such a manner as to render portions superfluous or meaningless.'" *State v. Fisher*, 304 Kan. 242, 268, 373 P.3d 781 (2016) (quoting *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 [2004] ["The court should avoid interpreting a statute in such a way that part of it becomes surplusage."]). This court's decision in *Dickson* applied this rule: "We may presume that the House Judiciary Committee would not formulate one subsection that made another redundant and then retain both." *Dickson*, 275 Kan. at 691. Reading the provisions together creates an ambiguity and means a plain language reading of the provisions does not resolve the potential tension between the various provisions.

Besides the interpretation adopted by the dissent, several other readings seem equally plausible. For example, the Legislature might have intended for (b)(1) to apply when the defendant orally contacts or orally penetrates the female genitalia, orally contacts the male genitalia, penetrates the anus of a male or female by any body part or object, or orally or anally copulates or has sexual intercourse with an animal. And (b)(2) applies when a defendant causes a child to do those things with any person, including the defendant.

13

The Court of Appeals in *Dickson* read the language in yet another way after noting it needed to distinguish between the crimes so it "differentiated and harmonized" the two provisions. *State v. Dickson*, 30 Kan. App. 2d 682, 687, 46 P.3d 1216 (2002), *aff'd in part, rev'd in part* 275 Kan. 683, 69 P.3d 549 (2003). The *Dickson* Court of Appeals panel limited (a)(1) "to a defendant's sodomy with a child of the designated age *when the child has expressed or exhibited a willingness* to engage in the act," and (a)(2) "to a defendant's sodomy with such a child *when the child did not express or exhibit a willingness* to engage in the sexual activity." 30 Kan. App. 2d at 687.

This court rejected that reading and adopted yet another one in *Dickson* after examining the legislative history of the criminal sodomy statutes. In doing so, the *Dickson* court applied a different rubric for statutory interpretation than the one this court currently uses because it examined the legislative history without declaring the statute ambiguous. See *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 48, 392 P.3d 68 (2017). But a reading of *Dickson* makes it clear the court found the statute ambiguous. And even if all members of that court did not, I do. So I end up at the same place as did the *Dickson* court, even under the current statutory interpretation rubric; I too would look to the legislative history to determine the Legislature's intent. See *Dickson*, 275 Kan. at 690-92.

While reasonable minds might differ with the conclusions the *Dickson* court drew from the less-than-clear legislative history, I land on the doctrine of stare decisis. This court adheres to precedent "'unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004) (quoting *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 356, 789 P.2d 541 [1990]).

The *Dickson* ruling is consistent with our rules of statutory interpretation and construction, and the Legislature has had 15 years to amend the statute if it felt we had erred. And legislative inaction in the face of a controlling court decision can suggest legislative intent. See *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016); *State v. Quested*, 302 Kan. 262, 279, 352 P.3d 553 (2015). I, thus, would follow *Dickson*.

NUSS, C.J., and ROSEN, J., join in the foregoing concurrence.

\* \* \*

STEGALL, J., dissenting:  I write separately because I would accept the State's invitation to overturn *State v. Dickson*, 275 Kan. 683, 69 P.3d 549 (2003), which erroneously interpreted our aggravated criminal sodomy statute when it held "any person" cannot include the defendant. As a result, Fitzgerald's conviction should stand.

The facts in *Dickson* are much like the ones here. There was no dispute that Dickson himself sodomized a 14-year-old girl. But he was charged and convicted under the part of the sodomy statute that criminalized "'causing a child 14 or more years of age but less than 16 years of age to engage in sodomy with any person or animal.'" 275 Kan. at 686 (quoting K.S.A. 21-3505[a][3]).

On appeal, Dickson argued the evidence to convict him of this version of criminal sodomy was insufficient. We framed the question as one of statutory interpretation and explained our approach as follows:

> "The resolution of this issue involves the interpretation of the relevant provisions of K.S.A. 21-3505(a)(3). In so doing, we are guided by certain rules of statutory construction which are applicable in the present case. Interpretation of a statute is a

15

question of law subject to unlimited review. The intent of legislature governs if that intent can be ascertained. In ascertaining that intent, we are not limited to consideration of the language used but look to historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citations omitted.]" 275 Kan. at 688-89.

Conspicuously absent from the *Dickson* court's analysis is the prime rule of statutory construction—the ordinary meaning of the statute's plain language governs. See *Wisconsin Central Ltd. v. United States*, 585 U.S. __, 138 S. Ct. 2067, 2070, __ L. Ed. 2d __ (2018) ("As usual, our job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'"); *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. __, 137 S. Ct. 1002, 1010, 197 L. Ed. 2d 354 (2017) ("'The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written.'"); *State v. Ward*, 307 Kan. 245, 257, 408 P.3d 954 (2018) ("'Repeated holdings by our Supreme Court have stated that the plain language of the statute governs.'"). Only when the statute's language is unclear or ambiguous do courts consider things such as legislative history. *State v. Arnett*, 307 Kan. 648, Syl. ¶ 4, 413 P.3d 787 (2018).

But *Dickson* skipped this crucial step and wound its way through an unnecessary tangle of legislative materials, only to discover it provided no substantive guidance. See *Dickson*, 275 Kan. at 689-90 ("Examination of the committee's minutes and attachments to the minutes reveals no legislative history regarding the addition of the phrase 'any person.'"); 275 Kan. at 691 ("As we have stated, there was no legislative history regarding the reasons for this amendment."). Ultimately, the court inferred from the sequence of various pieces of legislation that "any person" really meant "any person *other than the defendant*." (Emphasis added.) See 275 Kan. at 693. In the end, the court reversed Dickson's aggravated sodomy conviction on these grounds. 275 Kan. at 697.

16

Decisions like *Dickson* illustrate why this court has, more recently, been loath to look beyond the plain language of the text. "This court deems the language of a statute to be the primary consideration in ascertaining the intent of the legislature because the best and only safe rule for determining the intent of the creators of a written law is to abide by the language that they have chosen to use." *Merryfield v. Sullivan*, 301 Kan. 397, 399, 343 P.3d 515 (2015). Why we decline to follow that approach here is not obvious to me.

Contrary to today's majority, I would stick to our clearly enunciated commitment to the plain language of the statute. Among the virtues of this approach is a healthy respect for the Legislature as the co-equal department of government primarily charged with policy making in the arena of criminal law. Additionally, as is often the case, the plain language analysis ends up being straightforward, comprehensible, predictable, and relatively easy to apply.

Fitzgerald was charged under K.S.A. 2017 Supp. 21-5504(b)(2), which defines aggravated criminal sodomy as "causing a child under 14 years of age to engage in sodomy with any person or an animal." The only disputed matter in this case is whether "any person" includes Fitzgerald. Fitzgerald does not dispute the fact that he is a person. So the more precise question is whether "any" excludes Fitzgerald. Not long ago, we observed: "'[A]ny' is an indefinite adjective that quantifies the thing it modifies but does not change its substantive meaning." *In re T.S.*, 308 Kan. 306, __, 419 P.3d 1159, 1162 (2018); see Webster's New World College Dictionary 64 (5th ed. 2014) (defining "any" as "some, no matter how much or how little" and "without limit"); see also *United States v. Stock*, 728 F.3d 287, 295 (3d Cir. 2013) ("[T]he adjective 'any' can broaden the scope of the noun . . . to its natural boundary, but not beyond."). I would follow this simple and straightforward logic and conclude that "any person" includes rather than excludes Fitzgerald. The evidence, therefore, supports his conviction under K.S.A. 2017 Supp. 21-5504(b)(2).

Put plainly, this institution does not rewrite statutes. Our task is to interpret the plain meaning of the words chosen by the Legislature. If it intended something other than these words, it is the Legislature's job to fix the mistake.

For this reason, I respectfully dissent.