*2 The opinion of the court was delivered by

Per Curiam-.

In this peculiar case, the State brought charges against the defendant asserting elements under one statutory theory of theft, but the jury convicted the defendant under instructions setting out a different theory of theft. The Court of Appeals found that the conviction was the result of error invited by both parties and affirmed on that basis. We conclude, however, that the parties never raised on appeal the discrepancy between the charge and the instruction and the case must be analyzed on the terms that the parties argued it, as a matter solely of sufficiency of the evidence. Considered from that perspective, we disagree with the conclusion that the Court of Appeals reached and reverse.
The evidence produced at trial shows that Staff Sergeant Harry Price III lived for approximately 2 months with the defendant Jodie Laborde on a farm in Clay County, Kansas. They had been in a relationship for about a year, and he planned on marrying her. Price kept personal items at the farm, including gear issued to him by the United States Army.
On October 3, 2010, Price and Laborde had a falling out after an altercation between his daughter and Laborde. Laborde called for police intervention, and a couple of officers arrived at die scene. Price informed them that he was leaving anyway for a legal proceeding in West Virginia, arid he left the premises, taking with him tools and four small file.boxes that were in his truck.
Price then called one of the officers and asked for permission to return to the farm to retrieve his dress uniform and other military gear. The officér went into the house and brought back a paper bag full of civilian clothing drat Laborde provided. Laborde did not give him the dress uniform, however; she instead informed the officer that the dress uniforrh arid other gear were in a storage shed in Abilene. Price then left for West Virginia, not returning until a week later.
Meanwhile, on October 5, 2010, Barb Heller, who moderated a military-family support group on the Internet, responded to Labordes report that she was the vidtim of abuse. She traveled to Kansas from Arizona to meet Laborde and help her with household chores. While straightening up a closet, Heller discovered Prices *3 dress uniform on the floor. When Heller inquired why the uniform was in the house, Laborde started to shout at her and accused her of going through her closets and belongings.
Upon his return from West Virginia, Price went to the farm on October 17 for the purpose of recovering his military gear, much of which had been issued in anticipation of deployment to Iraq. An officer escorting him told him he could not go onto the property, and Laborde informed the police escort that Price already had the materials he was seeking.
On November 2, Price called law enforcement and asked for assistance in going onto the farm to retrieve his property. Two officers accompanied him to the farm to keep the parties apart while the officers recovered the gear necessary for his deployment. Price waited while a deputy asked Laborde about his military gear. She told the deputy that she had taken the gear to Price s place of work. Price had already checked with his post, however, and verified that no one had brought any gear. When Price informed the deputy that he had checked with his post, Laborde then stated that she had taken the gear to a barracks where he had once been stationed. Price had already checked the barracks and determined that nothing had been turned in at that location either. Laborde then said that the gear was in storage.
Laborde initially told the police that they could not come onto the farm, and she claimed that she had sole control of the farm. She eventually relented and gave tire police permission to look through the house and sheds. They found a bag of military gear, but name tags showed that it belonged to other soldiers, not Price, and Laborde told the officers that another soldier had started living at the farm.
Another deputy talked with Laborde and accompanied her back to tire house. He persuaded her to allow Price to take his Harley Davidson motorcycle away from the farm. The police escort did not look for Price s other property, and again Laborde stated that Price already had constructive possession of all of the military gear, either at his barracks or in storage.
Not long afterwards, soon after Thanksgiving and shortly before service-family advocate Heller left Kansas, she had a conversation *4 with Laborde about how her new romantic relationship was going. She asked if things were going well enough that Laborde could give Price his materials back. Laborde responded that she had sold his possessions at a garage sale.
Price subsequently obtained judicial leave to enter the farm to retrieve his property. On December 8, accompanied by a deputy, he walked through the farm. Laborde informed the police escort that she had taken Prices property to the base. Price nevertheless was able to locate about half of the missing military gear, but he never was able to locate about $4,615.50 worth of military property, including such items as coats, sleeping bags, hats, safety glasses, night-vision goggles, a first-aid kit, and shirts. When asked to explain how Price was able to find some of his military gear on the premises after she said that it was all gone, Laborde accused Price of sneaking onto the property and hiding the gear in a locked shed.
Around Christmas, service-family advocate Heller sent Laborde a text-message again inquiring about the status of Price’s military gear. Laborde replied with a text- message reading: “WTF. Give it a rest! Taken or donated to GW! What is ur deal? U worried about them or us? NOTHING of theirs is anywhere near us or our home. Wanna come?” Laborde testified at trial that her message referred only to those items that Price left after his December 8 walk-through, and she further testified that police had given her permission to sell those items. Earlier, however, Laborde had denied sending the text and had accused Price’s daughter of sending the text on her phone without her permission. Laborde continued to deny disposing of any military property.
Army Sergeant Luke McGuire was assigned to investigate Price’s failure to return military property that was in his custody. McGuire testified that Price, despite having direct responsibility for the equipment, was not liable for its loss because he was not allowed back on the premises and had made reasonable attempts to retrieve it. During the course of his investigation, McGuire left messages for Laborde to call him back, but she never returned the calls. McGuire also checked with Price’s unit headquarters and company buildings to determine whether the missing property had been turned in, which it had not.
*5 On January 11, 2011, the State filed a complaint charging Laborde with one count of felony theft by deception under K.S.A. 21-3701(a)(2). On April 29, 2011, the State filed an information, again charging Laborde with theft by deception. Finally, on December 1, 2011, at the beginning of the jury trial, the State filed an amended information, repeating the K.S.A. 21-3701(a)(2) theft by deception charge but changing the owner of the property from Price to the United States Army.
Both parties submitted instructions to the court setting out the elements of theft by unauthorized control. The jury found Laborde guilty of felony theft, and the district court sentenced her to a guideline term of 7 months and ordered her to pay restitution. The Court of Appeals affirmed the conviction in State v. Laborde, No. 107,872, 2013 WL 2395452 (Kan. App. 2013) (unpublished opinion). This court granted Laborde’s petition for review.
The parties have focused their arguments on whether the evidence educed at the trial sufficed to sustain a conviction for theft by deception. The Court of Appeals commented that Laborde was correct in her assertion that the State failed to present sufficient evidence to convict her of theft by deception. The parties reiterated these arguments before this court on review. At oral argument, Laborde insisted that the State was precluded from even addressing the sufficiency of the evidence question because it neglected to file a cross-petition for review.
We note that the State is not only not required to cross-petition in an appeal in which it prevailed in the Court of Appeals, it is precluded from doing so. Supreme Court Rule 8.03(a)(4)(C) (2014 Kan. Ct. R. Annot. 77), addresses a situation in which the Court of Appeals reverses a criminal conviction. In such an instance, logically, the State is required to file a petition for review in order to obtain review of an issue. In the present case, however, the Court of Appeals affirmed the conviction.
Laborde faults the State for failing to do what we have explicitly told the State that it is not permitted to do. This court has explicitly held that the State is not permitted to petition for review from an issue that it won in the Court of Appeals, even if it disagreed with the rationale:
*6 “We first conclude that the States petition for review on the correct interpretation of K.S.A. 2009 Supp. 60-455(d) was improvidently granted. The State has no quarrel with the Court of Appeals panel’s ultimate decision in its favor, that is, the panel’s affirmance of Halt’s convictions and sentences. Only a party that is 'aggrieved by a decision of the Court of Appeals’ is eligible to file a petition for review. Rule 8.03(a) (2012 Kan. Ct. R. Annot. 72). The State does not qualify merely because it would have preferred a different rationale to support its victory.” (Emphasis added.) State v. Hart, 297 Kan. 494, 496, 301 P.3d 1279 (2013).
The issue of the sufficiency of the evidence therefore remains before us. Prosecutions in this state are based on tire charging document, which may be a complaint, indictment, or information. K.S.A. 22-3201(a). Neither party suggests that there was error in the jury instruction, and both parties restrict their arguments to whether the evidence supported a conviction of the charged crime, theft by deception.
When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. State v. Williams, 299 Kan. 509, 525, 324 P.3d 1078 (2014).
In relevant part, K.S.A. 21-3701 defines theft:
“(a) Theft is any of the following acts done with intent to permanently deprive the owner permanently of tire possession, use or benefit of the owner’s property:
‘(1) Obtaining or exerting unauthorized control over property;
‘(2) obtaining by deception control over property;”’
Theft by deception sets out different elements that the State must prove than theft by unauthorized control. Theft by deception demands a specific land of proof from the State. The statutory language demonstrates clearly that the legislature intended to require the State to prove that the intended victim “was actually deceived and actually relied upon the false representation in order for the defendant to be found guilty of theft by deception.” State v. Finch, 223 Kan. 398,402, 573 P.2d 1048 (1978). The statutory phrase "by deception” indicates an agency or instrumentality as a causative factor. The State must prove that the defendant “obtained control over another’s property by means of a false statement or representation.” 223 Kan. at 404.
*7 The Court of Appeals stated:
“Laborde correctly asserts that the jury did not have sufficient evidence to convict her of theft by deception. The State presented no evidence that Price or the U.S. Army transferred Price’s military gear to Laborde in rebanee on a false statement or representation. Although a host of evidence certainly suggests that Laborde lied about what she had done with the militaiy gear, these lies were all post facto and therefore did not induce Price to transfer his military gear to Laborde. [Citation omitted.]” 2013 WL 2395452, at “3.
This holding by the Court of Appeals accurately summarizes the evidence, or the lack thereof, and is correct. The State did not produce evidence proving one of the necessary elements of theft by deception-that Laborde obtained control over Price’s property by means of a false statement or representation that deceived Price and on which he relied. See State v. Fritz, 261 Kan. 294, 299, 933 P.2d 126 (1997). Giving away or selling Price’s property may have been theft by exercising unauthorized control of the property, but lying about what she had done with die property did not, by itself, constitute theft. She already had control over the property which was located in the house and on the land that she occupied; she did not gain control over that property by means of subsequent misrepresentations.
If the Court of Appeals had ended its analysis at diis point, it presumably would have reversed the conviction and we would simply affirm. The Court of Appeals elected, however, to proceed to an analysis of invited error. 2013 WL 2395452, at *4. Although the parties did not argue that Laborde was actually convicted of theft by unaudiorized control, the Court of Appeals decided drat the record contained sufficient evidence to sustain a conviction of that alternative theory of felony theft. The court then held that Laborde invited the unauthorized control instruction, which precluded her from complaining about a conviction based on that instruction.
The Court of Appeals improperly opened a door to an analysis of an issue that was not before it. As a general rule, unless there are exceptional circumstances, appellate courts do not consider issues on appeal that were not raised by the parties. State v. Adams, 283 Kan. 365, 367, 153 R3d 512 (2007). Failure to brief and argue an issue constitutes a concession of an issue by the parties. See, e.g., *8 State v. Godfrey, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015); State v. Johnson, 269 Kan. 594, 602, 7 P.3d 294 (2000).
For this reason, we need not and do not evaluate' the correctness of the reasoning employed by the Court of Appeals in concluding that the instruction constituted invited error. We note only that an instructional error of this type, when properly raised by a party, demands a deeper inspection of such issues as whether the change constitutes constructive amendment, whether structural error should apply, and whether courts should engage in harmless error analysis. See, e.g., United States v. Brandao, 539 F.3d 44, 57 (1st Cir. 2008) (listing and discussing cases); United States v. Thomas, 274 F.3d 655, 670 (2d Cir. 2001) (constructive amendment to charge is per se prejudicial but not necessarily structural error); United States v. Floresca, 38 F.3d 706, 713 (4th Cir. 1994) (constructive amendment to charge is structural error); United States v. Hugs, 384 F.3d 762, 768 (9th Cir. 2004) (defendant indicted for involuntary manslaughter on theory he unlawfully killed the victim without malice "in the commission of an unlawful act,” but jury instruction included alternative theories of commission of lawful act done unlawfully or lawful act done with reckless or wanton disregard for human life; held to be harmless because evidence necessary to prove each element contained in indictment was "essentially uncontroverted” and jury was admonished it could not convict of any conduct not charged in the indictment). The State did not seek to preserve its case by arguing constructive amendment, and the issue is not before us.
The posture of this case as argued by the parties is not nearly so complicated. This is, plain and simple, a sufficiency of the evidence appeal. We find that the evidence was insufficient to convict Laborde of theft by deception.
The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed.
[[Image here]]