NOT DESIGNATED FOR PUBLICATION

No. 116,323

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERRY R. SIMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JEAN M. SCHMIDT, judge. Opinion filed June 2, 2017. Affirmed.

*Dionne A.L. Carter*, of Carter Law Offices, of Topeka, for appellant.

*Kailea Bogner*, legal intern, *Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

*Per Curiam*:  Jerry R. Sims appeals his conviction for battery in violation of K.S.A. 2016 Supp. 21-5413(a)(2). Sims contends there was insufficient evidence presented at trial that he struck his girlfriend, Shannon Langston, in the head in a rude, insulting, or angry manner. Having reviewed Sims' claim on appeal, we find no error and, therefore, affirm the conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 2015, Langston invited Sims as well as Rodney and Christina Meggison (Langston's brother and sister-in-law), and their child, to her Topeka residence to play board games. According to Langston, Sims "was disappointed that [she] had invited the others over" and loudly referred to them as "white trash." Langston told Sims that he would have to leave if he continued to act in that manner. Sims responded "he was planning on it," but he returned to Langston's basement to finish his laundry.

Meanwhile, Langston and the Meggisons sat at her kitchen table to eat dinner. According to Langston, Sims entered the kitchen and he "was just being very vocal, and I asked him to please stop, and he was like you have food in your mouth again, and popped me [on the head] to where, you know, my hair goes like this [indicating], and I said, you need to stop." Langston said Sims "was not angry with [her], just angry at the situation." Sims then looked at Rodney and warned, "[D]on't look at me, I'll kill you," or, "'Is tonight the night that I'm going to kill you all?'"

According to Langston, Sims' conduct did not worry her because the physical contact was "no worse than me slap fighting my brother." She maintained "the language was rude, but the contact was not." Later, Langston testified that she did not believe a crime had occurred.

Christina viewed the incident very differently. She confirmed that Sims "hit [Langston] in the back of the head, and knocked her face forward towards her plate." Christina agreed that Sims looked angry and upset and that "his whole persona . . . was agitated." Contrary to Langston's testimony, Christina stated that Langston looked upset after Sims struck her on the back of her head. Christina testified that Sims' behavior "stunned" her.

Christina's husband, Rodney, corroborated her account of events at trial, testifying that Sims "smacked [Langston] in the back of the head, and then he threatened to kill me." Rodney also confirmed Langston "look[ed] kind of like she was in shock" and Sims "looked angry."

Immediately after the incident, Christina called the police. Law enforcement officers arrested Sims at the scene and he was charged with misdemeanor battery in violation of K.S.A. 2016 Supp. 21-5413(a)(2). Sims pled not guilty.

Following a bench trial, the district judge found Sims guilty, reasoning:

"Battery does not require . . . an injury. . . . [A]ll the witnesses, including [Langston], reported that you were drunk or at least had been drinking . . . and that you were rude, and that you were insulting. You were insulting to her family.

"I'm not persuaded by the fact that [Langston] does not believe herself to be a victim, because as I said, [battery] requires a touching, a physical contact. People throw glasses of water at each other, they spit, they kick, they do all sorts of things that require contact, and that's basically it. It requires contact. I find that contact happened, and I find that it was rude, insulting, or [angry]. That—you know, people don't do that kind of thing when they're in a happy mood. It wasn't done in a joy, joking, or playful manner.

"I don't think it would've been done had you not been irritated by her family. And I think it's clear that you were irritated. You were irritated at her.

. . . .

"One quote was [Christina] said, 'if you look at me, I'll kill you.' According to [Langston] it was 'tonight is the night I'm going to kill you all,' which tells me what your demeanor was, and what your attitude at the time was, which I said, in my mind, has convinced me that you were over the edge. It was not playful, accidental, or unintended."

Sims was sentenced to 30 days in jail and fined $200, but placed on a 6-months' unsupervised probation. Sims filed this appeal.

3

On appeal, Sims contends there was insufficient evidence at trial to convict him of battery in violation of K.S.A. 2016 Supp. 21-5413(a)(2). While Sims admits that he struck Langston, he contends "the State failed to produce any direct evidence that the physical contact between the parties was done in a rude, insulting or angry manner."

When a criminal defendant challenges the sufficiency of evidence, appellate courts review all the evidence in the light most favorable to the State. This court will uphold a conviction if, based on the evidence presented at trial, it is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

K.S.A. 2016 Supp. 21-5413(a)(2) defines battery as "knowingly causing physical contact with another person when done in a rude, insulting or angry manner." Sims contends "[t]he trial court erred in placing more emphasis on the testimony of [Christina] than it did on that of Ms. Langston." According to Sims, this was error because Sims' "physical contact, when viewed through the eyes of the victim does not rise to the level of battery beyond a reasonable doubt."

Sims' contention is not persuasive for two reasons. First, Kansas courts do not restrict proof of the "rude, insulting or angry" element of battery only to the testimony of the purported victim. For example, in *State v. Cooper*, No. 113,401, 2016 WL 4585096, at *3 (Kan. App. 2016) (unpublished opinion), our court held:

> "Nothing in the plain language of [K.S.A. 2014 Supp. 21-5413(a)(2)] suggests that 'rude, insulting or angry manner' is determined based solely on the defendant's subjective perceptions.
>
>  "Instead, we apply an objective standard that looks to the manner in which the defendant acted, as perceived by a reasonable onlooker."

4

Indeed, battery convictions may be proven by any competent evidence regardless of whether the victim even testifies in court.

Upon our review, there was sufficient evidence for the district court to conclude that Sims struck Langston in a "rude, insulting or angry manner." Langston, Christina, and Rodney all testified that Sims appeared angry immediately before he hit Langston. Christina also testified that Langston looked upset after Sims struck her in the back of her head. For her part, Christina was "stunned" over the physical contact. Rodney also confirmed that Langston "look[ed] kind of like she was in shock" after sustaining the blow to her head. These facts provide ample proof that Sims struck Langston in a "rude, insulting or angry manner."

There is a second flaw in Sims' claim of error. Although he asserts "[t]he trial court erred in placing more emphasis on the testimony of [Christina] than it did on that of Ms. Langston," this court does not reweigh the evidence or assess the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). Indeed, "[t]he determination of credibility of [a witness] is solely within the province of the factfinder, and the factfinder's determination is not to be set aside unless the witness' testimony is so incredible and improbable as to defy belief." *State v. Sitlington*, 291 Kan. 458, Syl. ¶ 7, 241 P.3d 1003 (2010). Nothing in the record suggests the testimony of Christina or Rodney was otherworldly or preposterous. The district court acted well within its authority when it placed greater weight on the testimony of these two eyewitnesses than it did to the testimony of Langston.

Reviewing the trial evidence in the light most favorable to the State, a rational factfinder could have found Sims guilty beyond a reasonable doubt of battery. See *Laborde*, 303 Kan. at 6.

Affirmed.