NOT DESIGNATED FOR PUBLICATION

No. 117,759

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES R. ARNOLD II,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed August 17, 2018. Reversed.


*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.


*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.


PER CURIAM: James R. Arnold II appeals his jury trial convictions in two consolidated district court cases, claiming the evidence was insufficient to support the convictions. The State is vested with the authority to determine the charges to be brought against a defendant for the alleged criminal activity and must present evidence to support the charges. It did not do so in this case. As more fully explained below, we agree with Arnold. The evidence presented to support the convictions was insufficient. We reverse.

1

Jeffrey and Cynthia Sugarbaker hired Arnold, owner of Premier Lawncare (Premier), in late May 2015. Arnold agreed to install a yard irrigation system, cut, seed, and provide four fertilizer treatments to the Sugarbaker's lawn from June to September. In exchange, the Sugarbaker's agreed to pay $3,160. They paid a total of $1,843—half up front and one monthly payment—per their contract with Premier. Weather and equipment issues caused delays in service and installation. Arnold made one fertilizer treatment to the Sugarbaker's lawn but never returned. The Sugarbakers were unable to contact Arnold. Throughout June and July, they emailed and called Brittany Langley, Premier's office administrator, but no one completed the work. The Sugarbakers asked for a refund, never received it, and filed a police report near the end of July 2015.

Jayme Fuentes hired Arnold in the spring of 2016. Arnold agreed to install an irrigation system, sod, trees, shrubs, and drainage in exchange for $9,286.08, with half of the fee paid up front. Fuentes paid Arnold $4,693.09.  Arnold was to start work a few weeks later and take about one week to complete the project. Topsoil was delivered to Fuentes' driveway, but it was left there for several months and it eventually grew weeds. Fuentes contacted Premier by phone and email from May through August. Arnold failed to complete the work. Fuentes eventually hired another contractor.

Alfred and Victoria Miller hired Arnold in June 2016 to remove a garden and compost pile; re-sod the area; and add a rock bed, a retaining wall, and a berm to divert rain water away from the Millers' basement. The Millers agreed to pay $10,721.00 for all of the work with half up front and paid Arnold $5,062.54.

Victoria spoke by phone and email with Langley throughout July. Arnold agreed the job would begin on July 6 and end by July 13, subject to weather conditions. The work completion date was extended by the parties, further rain in August caused more delays, and the deadline was again extended to the end of August. Alfred sent an email and letter to Arnold in early August. He wanted his money back and was canceling the

contract because of the lack of contact and no work. The Millers' basement flooded in September. In October, the Millers received a certified letter from Premier requesting payment in full to avoid late fees and "collection activity."

Lawrence Johnson II hired Arnold in July 2016 to landscape his yard. Per their contract, Arnold would take down a fence, level out the backyard, add dirt beneath the air conditioner, and put everything back for $1,478.13, half paid up front. Johnson paid $739.07. Arnold never started the work. The day work was to begin, it rained. Over the next few weeks, Johnson contacted Arnold by phone and text message. Arnold advised he was lining up employees and supplies but no one completed the work. Arnold stopped communicating with Johnson. Johnson then requested a refund to no avail.

The State charged Arnold with one count of felony theft in 15CR2710, and two counts of felony theft and one count of misdemeanor theft in 16CR3027. The State alleged Arnold committed each theft by unlawfully obtaining or exerting unauthorized control over money belonging to the victims. The district court consolidated the cases for trial.

At trial, each victim testified to voluntarily paying one-half of the cost of Arnold's services before he began working. They also testified they did not give Arnold authority to spend the money on anything but the work he agreed to perform.

The jury found Arnold guilty of one count of felony theft in case No. 15CR2710; and guilty of two counts of felony theft and one count of misdemeanor theft in case No. 16CR3027. In case No. 15CR2710, the district court sentenced Arnold to 12 months with the Kansas Department of Corrections (KDOC) and then granted him probation for 60 months with an initial jail sentence of 60 days in the county jail. In case No. 16CR3027, the district court sentenced Arnold on each of the felony theft convictions to 12 months with the KDOC and then granted him probation for 60 months. On the misdemeanor

3

count, the district court sentenced him to 12 months in the county jail with his probation terms concurrent to his felony probation. The district court ordered the three charges in case No. 16CR3027 to run concurrent with each other and with case No. 15CR2710.

Arnold alleges there is insufficient evidence for his convictions since the victims contracted with him and, in exchange for his services, consented to his control of the money when they paid him.

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

K.S.A. 2017 Supp. 21-5801(a) defines theft in several different forms. Larceny, embezzlement, false pretense, extortion, and receiving stolen property have been consolidated into the single crime of theft. The former offenses kept some of their separate identity in the statute's subdivisions. See *State v. Lashley*, 233 Kan. 620, 633, 664 P.2d 1358 (1983). For example, the former crime of embezzlement is now found in K.S.A. 2017 Supp. 21-5801(a)(1). See *State v. Rios*, 246 Kan. 517, 527, 792 P.2d 1065 (1990), *abrogated on other grounds by State v. Ward*, 307 Kan. 245, 408 P.3d 954 (2018).

The State charged Arnold under K.S.A. 2017 Supp. 21-5801(a)(1). Under this subsection, theft is "[o]btaining or exerting unauthorized control over property or services" with the intent to permanently deprive its owner of possession, use, or benefit of the property or services. Unauthorized control is not defined by statute. See K.S.A.

2017 Supp. 21-5111. Our court has determined "'[u]nauthorized control means control exercised over property of another without the consent of the owner.' [Citations omitted.]" *State v. Maxon*, 32 Kan. App. 2d 67, 76, 79 P.3d 202 (2003).

Kansas has addressed unauthorized control in many cases. In *Rios*, the Kansas Supreme Court ruled there was insufficient evidence to convict the defendant of theft by deception because his actions were instead theft by unauthorized control. 246 Kan. at 528. In *Rios*, a Dillard's store manager stole cash from the cash room and covered up his actions with fake customer refund vouchers. The court determined the State should have charged the defendant with theft by obtaining unauthorized control because the manager's actions were embezzlement, not deception. 246 Kan. at 527. To distinguish the two offenses, the court presented this analogy:

> "A farmer hires a fox to be in charge of his chicken house. There is no deception by the fox in obtaining his position. The fox has full access to all parts of the operation as a part of his job. Let us assume the fox starts stealing eggs from the egg storage area. To cover up the thefts, he replaces each stolen egg with a plastic one, or, perhaps, falsifies the records as to how many eggs have been laid. In such case, no theft by deception has occurred. The farmer has not been induced to part with the control of property through deception. The crime of embezzlement . . . has been committed.
> "By contrast, let us suppose a fox con artist approaches the farmer, stating he represents a wealthy eccentric who will pay twice the market price for eggs but who will only deal anonymously through the fox. The farmer turns his eggs over to the fox on the latter's promise that he will return the following morning with payment therefor in cash. The fox never returns. The farmer is a victim of theft by deception as he parted with his property as the result of the false statements." *Rios*, 246 Kan. at 527-28.

Similarly, the Kansas Supreme Court ruled there was insufficient evidence to convict the defendant of theft by deception in *State v. Laborde*, 303 Kan. 1, 8, 360 P.3d 1080 (2015). In *Laborde*, the defendant and her boyfriend, an Army staff sergeant, ended a year-long relationship. He moved away from her farm. She kept military gear issued to

5

him but for months denied having it. The victim, law enforcement, and others made multiple attempts to recover the gear. Eventually, they recovered half of the gear from her and she admitted to selling or giving away the other half. A jury convicted Laborde of theft by deception. In overturning her conviction, the Kansas Supreme Court noted: "Giving away or selling [the victim's] property may have been theft by exercising unauthorized control of the property, but lying about what she had done with the property did not, by itself, constitute theft." 303 Kan. at 7.

In another case, our court overturned a conviction of theft by deception because the evidence instead supported a finding of embezzlement. *State v. Boor*, No. 112,539, 2016 WL 97856 (Kan. App. 2016) (unpublished opinion). In *Boor*, the defendant, a bookkeeper, admitted to supervisors she took thousands of dollars from the company's funds instead of depositing them to the company's bank. The panel noted Boor did not use deception, but used her position as an employee "just as the fox [in *Rios*] used its position to steal the eggs. This is embezzlement." 2016 WL 97856, at *3.

The State concedes Arnold obtained the victim's money with authority but argues he exerted unauthorized control at some point when he did not complete the work for the victims. The State claims Arnold's business transactions were embezzlement. Yet there is insufficient evidence to support Arnold's conviction of theft by unauthorized control because he was not exercising control over the property of another. See *Maxon*, 32 Kan. App. 2d at 76.

Each of the victims agreed by contract to pay the down payment to Arnold to perform landscaping work. Arnold was not in possession of their property because the money became his after the victims voluntarily paid him. No evidence at trial suggests the money still belonged to the victims like the missing military gear in *Laborde*. See 303 Kan. at 7. Unlike the defendant in *Williams*, no one entrusted Arnold to protect their money—the victims voluntarily paid the down payment of one-half and hired him for

landscaping work. See *State v. Williams*, No. 114,683, 2016 WL 7324506, at *1 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1331 (2017).

The State claims Arnold was an employee of the victims but the contracts and the testimony show Arnold was never an employee of the victims—they contracted for his services. Unlike in *Rios* and *Boor*, Arnold was not in charge of the hen house. Like the farmer tricked by the fox con artist, the victims paid one-half of their money up front to Arnold who promised to perform landscaping work. Here, Arnold never returned, just like the fox. In the light most favorable to the State, Arnold may have committed theft by deception, but the State insists it never pursued that subsection of theft against him.

The evidence at trial fails to show Arnold exerted control over the property of another without the owner's consent, even in the light most favorable to the State. The evidence fails to support Arnold was guilty beyond a reasonable doubt for theft by unlawfully obtaining or exerting unauthorized control.

Reversed.