NOT DESIGNATED FOR PUBLICATION

No. 118,294

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRY L. FISHER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed October 19, 2018. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN and MALONE, JJ.

PER CURIAM: Terry Fisher appeals his conviction for driving under the influence (DUI). Fisher argues that the State did not present sufficient evidence that he was too intoxicated to safely operate a vehicle. Because sufficient evidence supports Fisher's conviction for DUI, we affirm.

Around 2:30 a.m. on August 3, 2016, Wichita police dispatched Officers Jared Thomas and Cameron Stokes to respond to a suspicious character call. The call reported that a car had been stopped at an intersection for a considerable time. Both officers wore

1

body cameras. Officer Thomas arrived first and found Fisher asleep at the wheel of a car stopped at the intersection. The car's engine was running, and Fisher's foot was on the brake. The car's radio was playing loud music.

Before contacting Fisher, Officer Thomas placed spike strips in front of the car. While he was carrying the strips to the front of the car, the car moved forward one or two feet. Officer Stokes arrived while Officer Thomas was putting down the spike strips. After Officer Thomas finished putting the strips in place, Officer Stokes approached the window of the car and attempted to rouse Fisher by shining his flashlight on Fisher's face. While Officer Stokes spoke to Fisher, Officer Thomas served as a "cover officer," standing on the passenger side of the car, approximately 10 feet from Fisher and observing the interaction between Fisher and Officer Stokes.

Once Fisher woke up, the officers observed that Fisher's eyes were "glossy" and "bloodshot," and that Fisher appeared to have drool on his shirt. Fisher was "lethargic" and "hard to understand"; his speech was mumbled and slurred. The officers found that Fisher was slow to respond to questions and that they had to repeat questions multiple times before Fisher would respond. Officer Stokes noted the car smelled strongly of alcohol. Officer Thomas, who was further away from Fisher and the car, did not smell alcohol.

Officer Stokes asked Fisher to place the car in park and shut off the vehicle. Fisher complied. Officer Stokes next asked Fisher for his driver's license. After Officer Stokes repeated the request several times, Fisher produced a Kansas ID from his wallet. Officer Stokes then asked Fisher to get out of the car. After Officer Stokes repeated this request several times, Fisher got out of the car. Fisher leaned on the car to retain his balance once he got out of the car. Officer Stokes patted Fisher down to check for contraband and weapons. Fisher was able to stand for the patdown without supporting himself on the car, but he did need assistance to turn around and put his hands on his head.

2

Officer Stokes next asked Fisher if he had been drinking alcohol; Fisher did not respond but instead "just kind of stood there." Officer Stokes then asked Fisher multiple times to perform a field sobriety test; Fisher alternated between nonresponsively staring into the distance and slightly shaking his head no.

Next, Officer Stokes asked Fisher to walk from the parked car to the patrol vehicle, a distance of about 20 feet. Fisher struggled to maintain his balance while walking to the patrol car. At the patrol car, Officer Stokes asked Fisher if he was okay and Fisher responded that "this is embarrassing, I made a mistake." Fisher moved to the end of the patrol car and again leaned on it for support. Officer Stokes then asked Fisher for his last name and birthdate. Fisher took out his wallet and tried to get out his ID for Officer Stokes; Officer Stokes had to tell Fisher multiple times that Officer Thomas already had his ID and that Officer Stokes just wanted him to spell his last name.

The officers then placed Fisher in the back of the patrol car. Next, Officer Stokes read Fisher the implied consent advisory form. Officer Stokes asked Fisher if he would be willing to submit to a breath test. Fisher, who was slumped over in the back of the patrol car, did not answer yes or no. Instead, Fisher continually asserted "you are placing me under arrest" while Officer Stokes explained several times that he was asking whether Fisher would consent to a breath test and needed a yes or no answer. Eventually, Fisher refused the test and Officer Stokes completed the implied consent paperwork accordingly.

The State charged Fisher with driving under the influence to the extent that he was incapable of safely operating a vehicle. At trial, Officer Thomas and Officer Stokes testified on behalf of the State. The State admitted the officers' bodycam footage. Fisher did not produce any evidence or take the stand, but cross-examined the officers.

During cross-examination, Fisher emphasized that the officers did not perform any field sobriety tests or a breath or blood alcohol test. Fisher also cross-examined the

officers to elicit testimony that Fisher's conduct may be explained by tiredness and the fact that Fisher had just been awakened by the officers. On cross-examination, the officers admitted that Fisher did not struggle with dexterity when he put the car in park and removed his ID from his wallet. Officer Stokes admitted on cross-examination that bloodshot eyes and the smell of alcohol are not determinative evidence that someone is intoxicated.

At the close of the State's case, Fisher moved for a judgment of acquittal and a directed verdict. The court denied the motions. The jury convicted Fisher of driving under the influence. The trial court sentenced Fisher to 12 months in jail. Fisher timely appealed.

*Did the State Submit Sufficient Evidence at Trial For a Jury To Reasonably Convict Fisher of Driving Under the Influence?*

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). The court does not "reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility" when reviewing a conviction for sufficiency of the evidence. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). The court will uphold a conviction if the court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt on the basis of the evidence presented. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). The court will only reverse a guilty verdict in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). A conviction may be upheld even if based only on circumstantial evidence and reasonable inferences fairly deducible from that circumstantial evidence. *State v. McClelland*, 301

4

Kan. 815, 820, 347 P.3d 211 (2015) (citing *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 9, 245 P.3d 1030 [2011]).

"A challenge to the sufficiency of the evidence in a criminal case amounts to a posttrial claim that the State failed to meet its burden to prove each essential element of the charges." *State v. Brown*, 306 Kan. 1145, 1157, 401 P.3d 611 (2017) (citing *State v. Logsdon*, 304 Kan. 3, 21, 371 P.3d 836 [2016]). Here, the State charged Fisher with driving under the influence under K.S.A. 2016 Supp. 8-1567(a)(3). The statute imposes a criminal penalty for "operating or attempting to operate any vehicle within [Kansas] while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." K.S.A. 2016 Supp. 8-1567(a)(3). The State thus had the burden to prove that Fisher: (1) operated or attempted to operate a vehicle, (2) did so in the state of Kansas, and (3) was too intoxicated to safely drive the vehicle when he operated or attempted to operate the vehicle.

Fisher did not argue at trial or on appeal that the State failed to submit substantial evidence with regards to elements 1 or 2. Because Fisher did not raise or brief the sufficiency of the evidence with respect to the first two elements, he has abandoned those arguments and this court need not address them. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

On appeal Fisher argues only that the State failed to present sufficient evidence that he was "incapable of safely driving a vehicle." He cites one case in support of this argument: *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 172 P.3d 1205 (2007). *Wonderly* deals with the issue of probable cause for arrest in the context of a motion to suppress evidence obtained postarrest, while the issue in this case is sufficiency of the evidence at trial. 38 Kan. App. 2d at 808-09. Appellate courts review trial courts' legal conclusions, including conclusions about the existence of probable cause, de novo. An appellate court may not, however, reweigh evidence, assess witness credibility, or resolve conflicts in the evidence when reviewing a trial court's determination of probable cause.

5

38 Kan. App. 2d at 802. In *Wonderly*, after reviewing the trial court's legal conclusion de novo, this court reversed the trial court's conclusion that the police had probable cause to arrest Wonderly on suspicion of driving under the influence. 38 Kan. App. 2d at 808-09.

The issue here is not probable cause; the issue is sufficiency of the evidence. The de novo standard of review from *Wonderly* is not applicable here. Appellate courts review claims of insufficient evidence using a different standard of review than that used to review conclusions about probable cause. They must construe the evidence "in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Rosa*, 304 Kan. at 432-33. Reviewing the facts at hand in the light most favorable to the State, the State had sufficient evidence to convict Fisher of driving under the influence.

Here, the State presented the jury with testimony from the two officers who stopped Fisher. The officers testified that they found Fisher asleep at the wheel of a running car stopped in the lane of travel at an intersection. The officers testified that when they awakened Fisher, he was lethargic and hard to understand because he mumbled and slurred his words. The officers testified that they had to repeat questions and commands multiple times before Fisher would respond or comply. The officers testified that Fisher struggled with balance and stability; he stumbled as he walked and supported himself by leaning against a car whenever possible. The officers testified that Fisher's eyes were bloodshot and glossy. One officer testified that Fisher smelled strongly of alcohol.

The State also entered the officers' body camera footage into evidence and played the footage for the jury in court. The footage supports the officers' testimony. The video shows Fisher stumbling and weaving as he walks. The video shows Fisher repeatedly not responding to questions or commands by the officers, and instead, staring blankly into space or nodding his head lackadaisically. The video shows lapses in Fisher's comprehension: when Officer Stokes asked Fisher to give his last name and birthdate,

Fisher gets out his wallet and searches through it for his ID, despite Officer Stokes telling Fisher multiple times that Officer Thomas already has the ID and that the ID thus is not in his wallet. The video shows Fisher slumped over in the back seat of the patrol vehicle and responding incoherently to Officer Stokes' request that Fisher consent to a breath test. While Officer Stokes asked Fisher to consent to a breath test multiple times, explaining that he needed only a "yes" or a "no" in response, Fisher nonetheless continued to respond only by repeating, in a slurred voice, "you are placing me under arrest."

In his brief, Fisher argues that this evidence does not support a finding that he was too intoxicated to safely operate a vehicle and is better explained by the fact that Fisher was sleepy and had just been awakened by the officers. This court need not accept Fisher's reframing of the evidence. Rather, it must view the evidence in the light most favorable to the State and determine whether the evidence permitted a reasonable jury to find beyond a reasonable doubt that Fisher was too intoxicated to safely operate a vehicle.

At trial here, the State presented testimony from the two responding officers and the bodycam footage of their interactions with Fisher. As described above, the officers testified that Fisher displayed traits associated with intoxication: bloodshot eyes, difficulty comprehending questions, slurred speech, poor coordination, and smelling of alcohol. The bodycam footage showed Fisher sleeping behind the wheel of a running vehicle stopped at a stop sign in the lane of traffic. The footage also showed Fisher stumbling, struggling to follow directions or answer questions, and slurring his speech. Based on this evidence, a rational jury could find that beyond a reasonable doubt, Fisher was too intoxicated to safely operate a vehicle. We affirm Fisher's conviction.

Affirmed.